UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEONARD R. WHITFIELD,

                              Petitioner,          **DECISION AND ORDER**
        -vs-                                        No. 01-CV-0914(VEB)

FLOYD G. BENNETT, Superintendent,
Elmira Correctional Facility,

                              Respondent.
_____

## I.    Introduction

Petitioner, Leonard Whitfield ("Whitfield"), filed a *pro se* Petition (Docket No. 1) for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 7, 2001, asserting the following

grounds for relief: (1) "ineffective assistance of counsel "; (2)  "fair trial and due process"; and

(3) "cruel and unusual punishment, Eighth Amendment violation". *See* Petition at 5-6 (Docket

#1). Respondent answered the petition, arguing that Whitfield's ineffective assistance of counsel

claims were unexhausted and that the petition should be dismissed as a mixed petition containing

both exhausted and unexhausted claims. Respondent also asserted that those claims, along with

Whitfield's other two exhausted claims, were without merit and could be dismissed pursuant to

28 U.S.C. § 2254(b). *See* Docket No. 7. Whitfield subsequently sought and received an order

(Docket No. 12)  from this Court[1] staying his habeas petition so that he could return to state court

to exhaust his claims of ineffective assistance of trial counsel by means of a motion to vacate the

judgment pursuant to New York Criminal Procedure Law § 440.10. After exhausting those

_____
[1]         The parties have consented to disposition of the petition by a magistrate judge pursuant to 28
U.S.C. § 636(c)(1). *See* Docket No. 11.

claims, Whitfield now has returned to federal court and has filed his amended petition containing

the same claims he raised in his original petition. *See* Docket No. 13-1. The Court accordingly

orders that the stay be lifted and will proceed to consider the merits of Whitfield's habeas claims

as set forth in his amended petition (Docket No. 13-1).

## II.    Factual Background and Procedural History

The instant habeas petition stems from Whitfield's conviction, on a theory of accomplice

liability, *see* N.Y. Penal Law § 20.00, on one count of first degree robbery (N.Y. Penal Law §

160.15(2)) and one count of fourth degree conspiracy (N.Y. Penal Law § 105.10(1)). The armed

robbery occurred in the early morning hours of June 17, 1998, at Whitfield's place of

employment, the Mobile Express Mart in the Town of Waterloo, New York. The robbery was

carried out by Aldomond "George" Whitfield ("George") (the driver of the getaway car) and

Robert Anthony ("Robert") (the gunman), two of Whitfield's friends. George and Robert

subsequently pled guilty and agreed to cooperate with the prosecution in Whitfield's case. Also

involved in the planning of the robbery were Whitfield's friends LaRyan Hennigan ("LaRyan")

and Ray Hennigan ("Ray") who was George's cousin.

Whitfield, who was represented by assigned counsel from the public defender's office,

elected to have a bench trial in Seneca County Court before Judge Dennis F. Bender. On the day

trial was set to commence, defense counsel informed Judge Bender that Whitfield had informed

him over the weekend that he had "absolutely no confidence" in counsel's ability to represent

him and wanted new counsel substituted. 0128-0129.[2] Counsel indicated that Whitfield's request

---

[2]        Citations are to the "Bates-stamp" number printed on the bottom right-hand corner on each page of
the state-court records submitted in a separately bound volume by respondent.

arose from their disagreement about Whitfield's desire to waive his right to a jury trial. 0129-30.

Counsel nevertheless indicated that he was ready to proceed to trial. When the court asked

Whitfield if he had "anything to add" to counsel's request, Whitfield simply replied, "No, Your

Honor." 0130. Judge Bender denied the application, noting that it was "too little, too late" and

that he had not heard "any particulars which would justify [the] application" which appeared to

nothing more than a "stalling tactic" given the lateness of the request (minutes before trial was

set to commence). 0130. Defense counsel then requested that the trial judge recuse himself on the

basis that he had been involved in the plea allocutions of co-defendants George Whitfield and

Robert Anthony. 0131. After hearing argument from defense counsel and the prosecutor, 0131 *et

seq.*, Judge Bender denied the recusal motion, 0135-36. Whitfield still elected to proceed with a

bench trial.

The prosecutor introduced evidence to show that Whitfield had worked at the Express

Mart on the night in question. When he got off his shift at 12:30 a.m., Whitfield had failed to

lock the safe or take his bank bag to a bank depository, as he was required to do. T.103-04.

Several of his friends, including Robert and George, were seen in the store a short time prior to

the robbery; the surveillance videotape captured images of LaRyan and George talking with

Whitfield at about 11:15 p.m. and looking at the safe. *See* People's Exhibits 23, 28.

After he was done working, Whitfield, along with Robert, George and LaRyan, left the

Mobil Express Mart in Whitfield's car. 0422, 0511. George testified that while they were driving,

they all discussed the robbery and planned "how everything was going to go down." 0425.

Whitfield indicated that he knew that they could get a gun from George's cousin, Ray . 0425.

Robert's mother, Catherine McKoy ("McKoy"), testified that Whitfield had talked about robbing

his employer "[o]ff and on for weeks" prior to the robbery in front of Robert, George and LaRyan, among others. 0323-24. Whitfield stated, "we should rob this mother fucker" and said that "they could get a lot of money behind [sic] robbing it, thousands." 0324. McKoy also testified that her son, Robert, told her about his involvement in the robbery a couple of days later. She said that Robert was evasive when she asked him if Whitfield had been involved. However, when Whitfield came to her house later that night, and she confronted him about it, he said that "Rob stood to do the most time in it" because his fingerprints were on the gun. 0329. McKoy admitted that she helped secrete the gun at her house and later threw it into a swamp, but eventually told the police about the gun's location when she was questioned.

Whitfield and his friends drove from Waterloo to Ray's mother's house to get the gun and were seen driving past the store about an hour before the robbery by Nancy Munoz, the co-worker who was the victim of the robbery. Whitfield was seen driving the car. 0192-93; 0424. Jomaine Bogan ("Bogan"), a neighbor of Ray Hennigan's and an acquaintance of Whitfield and his friends, saw Whitfield outside the house where the gun was obtained. Bogan overheard a conversation in which LaRyan asked Ray for "the burner" (the gun). Bogan said that Ray "handed the object [a .32-caliber loaded Mauser] to two people" and then stated that he handed it to LaRyan, his brother.  Bogan admitted that Whitfield was standing with LaRyan at the time. 0487-88. They then drove to Robert's mother's house and surreptitiously obtained her car keys so that Robert and George could use that car for the robbery. 0430. After Robert and George completed the robbery, all four men met to divvy up the stolen money, which totaled between $800 and $900. 0443-44.

At about 4:00 a.m., Whitfield showed up at the Mobil Mart in the midst of the police

investigation of the robbery and talked to the police, his manager, and his co-worker who had

been the robbery victim. These individuals testified that Whitfield asked them what had

happened, were there any suspects, and how much money had been taken.

About two days later, Whitfield and his cohorts apparently heard that Bogan was talking

to Ray about the robbery and speculating that Whitfield and his friends had been involved. 0489-

91. (Bogan had witnessed the incident in which Whitfield and LaRyan borrowed the gun from

Ray) Bogan, an acquaintance of theirs, testified that Whitfield, LaRyan, George and Robert

encountered him at a store in Seneca Falls "[b]ecause they heard that [he] was telling people they

robbed the store." 0491.[3]

Whtfield did not testify at trial or present witnesses. The theory of the defense was that

the prosecution's evidence failed to prove that Whitfield had sufficient participation in the

planning of the robbery Counsel attacked the credibility of accomplice testimony provided co-

defendants George and Robert and argued that the testimony of other witnesses, namely, the store

clerk and the store manager, did not link Whitfield to the commission of the crime.

Judge Bender returned a verdict finding Whitfield guilty of the robbery charge and the

conspiracy charge; the petit larceny charge in the indictment was dismissed . Whitfield was

sentenced to concurrent terms of imprisonment, the longer of which was 11 years to 22 years.

The Appellate Division, Fourth Department, of New York State Supreme Court, unanimously

affirmed the conviction. *People v. Whitfield*, 275 A.D.2d 1034 (App. Div. 4th Dept. 2000). The

---

[3]        Apparently, at the time of the robbery investigation, Bogan had signed a written statement for the
police indicating that they had tried to beat him up a couple days after the robbery, 0558; however, at trial, Bogan
became evasive and said that he "wouldn't say" that they were "trying to keep [him] quiet" when they encountered
him at the store. 0491.

New York Court of Appeals denied leave to appeal.

This federal habeas petition followed. For the reasons set forth below, Whitfield's request for a writ of habeas corpus is denied.

## III.   AEDPA

The filing of Whitfield's petition post-dates the amendment of the federal habeas corpus statute on April 24, 1996, by the enactment of the Anti-terrorism and Effective Death Penalty Act ("AEDPA"). AEDPA has "significantly curtailed the power of federal courts to grant the habeas petitions of state prisoners." *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Pursuant to AEDPA, when a state court has adjudicated a habeas petitioner's claims on the merits, habeas relief may not be granted unless the state court's holding was contrary to, or was an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or was based on unreasonable determination of the facts in light of the evidence presented in petitioner's state court proceeding. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 412-13. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

## IV.   Analysis of the Petition

### A.   Ground One: "Ineffective Assistance of Counsel"

In his amended petition, Whitfield states that

Counsel insistently refused to represent petitioner's best interests in that he did not

> locate a couple of alibi witnesses for petitioner/or [sic] did he try to interview them or bring them to the court's attention; he lied to the court when he told the court that he and the petitioner did not agree on a jury or trial by the judge, petitioner did not have any faith in counsel's integrity to represent him effectively." Amended Petition at 2 (Docket No. 13-1).

This is all the factual information and legal argument which Whitfield provides regarding his claim of ineffective assistance of trial counsel. The Court reviewed Whitfield's C.P.L. § 440.10 motion papers where he raised this claim and found them similarly sparse. As the prosecutor noted in its affirmation opposing the C.P.L. § 440.10 motion, Whitfield did not identify the proposed alibi witnesses. The prosecutor also argued that the existence of alibi witnesses would be irrelevant because Whitfield did not have to be personally present at the time of the robbery to be criminally liable under an accomplice theory of liability.

In denying his claim that trial counsel erred in failing to call "a couple of alibi witnesses," the C.P.L. § 440.10 court held that because the charges were predicated upon accessorial conduct which did not involve his presence at the commission of the robbery, and the prosecution did not allege that petitioner was in the store or even on the premises at the time of the robbery, his "conclusory allegations [on the motion to vacate] [did] not justify a hearing to inquire into whether trial counsel's actions lacked strategic or other legitimate explanation." *Id.* (citation omitted). The C.P.L. § 440.10 court's rejection of this ineffective assistance claim was a correct application of federal law.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." *Id.* at 687.This performance is to be judged by an objective standard of reasonableness. *Id.* at 688; *accord, e.g., Bell v. Cone*, 535 U.S. 685 (2002). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. at 689 (citation omitted); *accord, e.g., Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001); *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001).

Second, the defendant must show prejudice from counsel's performance. *Strickland v. Washington*, 466 U.S. at 687. The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695. Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

"The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.), *cert. denied*, 484 U.S. 958 (1987); *accord, e.g., United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999); *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) . Given the inherently tactical nature of the decision not to call a particular witness, the Second Circuit generally has refrained from disturbing such choices by trial counsel.  *See Trapnell v. United States*, 725 F.2d 149, 155 (2d Cir.1983) ("We

have repeatedly noted our reluctance to second-guess matters of trial strategy simply because the chosen strategy was not successful."); *accord, e.g.*, *Pavel v. Hollins*, 261 F.3d 210, 217 (2d Cir. 2001); *see also United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997) ("[T]he tactical decision of whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation."); *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel."), *cert. denied*, 123 S. Ct. 1949 (2003); *Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Thus, "[c]omplaints of uncalled witnesses are not favored on federal habeas review.'" *DeArmas v. People of State of N.Y.*, 804 F. Supp. 524, 529 (S.D.N.Y. 2004) (quoting *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.NY. 1990)).

Whitfield failed to identify the names of the "couple of alibi witnesses" either in his amended habeas petition or his C.P.L. § 440.10 motion to vacate. As he gives no indication as to whom he may be referring, the claim is totally speculative.  A defendant cannot claim that trial counsel was ineffective in failing to call a witness on his behalf and then fail to provide the Court with what the witness' proposed testimony would have been, let alone who the witness was and whether the individual even would have agreed to testify on behalf of the defense at trial. *See McPherson v. Greiner*, No. 02 Civ.2726 DLC AJP, 2003 WL 22405449, at *25 (S.D.N.Y. Oct. 23, 2003) ("[Petitioner]'s claims that trial counsel was ineffective for failing to investigate are conclusory and give no indication as to what exculpatory evidence a proper investigation would have revealed, or how such evidence would have benefitted [petitioner]'s case.") (citing

*Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990) ("To affirmatively prove prejudice [from counsel's failure to investigate], a petitioner ordinarily must show not only that the testimony of uncalled witnesses would have been favorable, but also that those witnesses would have testified at trial. Moreover, if potential trial witnesses are not called to testify at a postconviction review hearing, the petitioner ordinarily should explain their absence and 'demonstrate, with some precision, the content of the testimony they would have given at trial.'")). Such speculation satisfies neither the deficient performance nor the prejudice prong of *Strickland*'s rigorous two-part test. *Id.* (citing *Rosario v. Bennett*, 01 Civ. 7142, 2002 WL 31852827, at *33 (S.D.N.Y. Dec. 20, 2002) (citations omitted in original); *Vasquez v. United States*, 96 Civ. 2104, 91 Cr. 153, 1997 WL 148812, at *2 (S.D.N.Y. Mar. 28, 1997) (holding, in a 28 U.S.C. § 2225 case, that "petitioner's allegations with regard to alleged counsel errors in pre-trial preparation and investigation and trial advocacy [we]re 'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source,' and, accordingly, . . . '[t]he vague and unsubstantiated nature of the claims' defeated petitioner's claim of ineffective assistance of counsel. . . .") (citations omitted in original)); *see also Parnes v. United States*, 94 Civ. 6203, 91 CR 152, 91 CR 165, 1995 WL 758805, at *3 (S.D.N.Y. Dec.21, 1995) (holding, in a 28 U.S.C. § 2225 case that "vague allegations d[id] not permit the Court to conclude that the alleged errors of Petitioner's counsel fell below 'prevailing professional norms'. . . and "[a]ccordingly . . . Petitioner's claim that he received ineffective assistance of counsel" was rejected on that basis); *Hartley v. Senkowski*, No. CV-90-395, 1992 WL 58766, at *2 (E.D.N.Y. Mar. 18, 1992) ("In light of th[e] demanding [*Strickland* ] standard [for demonstrating ineffectiveness], petitioner's vague and conclusory allegations that counsel did not prepare for

trial or object to errors carry very little weight."); *Matura v. United States*, 875 F. Supp. 235, 237-38 (S.D.N.Y.1995) (holding, in a 28 U.S.C. § 2255 case, that mere conclusory allegations that counsel was ineffective failed "to establish that his counsel's performance was deficient [and] . . . fail[ed] to overcome the presumption [under *Strickland* ] that counsel acted reasonably. . . ."). Therefore, Whitfield's claim that trial counsel was ineffective for not calling a "couple of witnesses" to present an alleged alibi defense must be denied. *Accord*, *e.g.*, *McPherson v. Greiner*, 2003 WL 22405449, at *25.

The Court now turns to Whitfield's claim next claim of ineffective assistance–that trial counsel "lied to the court when he told the court that he and the petitioner did not agree on a jury or trial by the judge." The C.P.L. § 440.10 court rejected this claim on the basis that it was "belied by the record[.]" This Court agrees. As the C.P.L. § 440.10 court found, Whitfield's conclusory allegation that trial counsel "lied" about Whitfield's decision to forgo a jury trial is unsupported. This Court further agrees with the state court's finding that even if no disagreement existed between Whitfield and his attorney about this trial strategy, it "would not warrant an order vacating judgment." *See* Order Denying C.P.L. § 440.10 Motion (attached to Amended Petition (Docket No. 13)). To the contrary, when the trial judge questioned Whitfield as to whether he had anything to add to counsel's comments about the basis for Whitfield's request to substitute attorneys, Whitfield replied negatively. 0130. Whitfield knowingly waived his right to a jury trial after an on-the-record colloquy conducted by the trial court; Whitfield's waiver subsequently was reduced to a signed writing. 0137-42; *see also* People's Answering Affirmation in Opposition to C.P.L. § 440.10 Motion, ¶19 (attached to Amended Petition (Docket No. 13)). This aspect of Whitfield's ineffective assistance of counsel claim accordingly is denied as it lacks

-11-

a factual basis in the record and is without merit.

**B.    Ground Two:         "Fair Trial and Due Process"**

The second ground of Whitfield's amended petition (Docket No. 13-1) contains two

claims. First, he contends that the trial court erred in denying his requests for substitute counsel.

Second, he asserts that the trial court erred in denying his motion for recusal.

> [T]he [trial] court was biased and prejudiced against him in that the court refused
> to recuse itself when counsel requested this and the court refused to assign another
> counsel, the court was also the court that tried petitioner's alleged accomplices
> and already predisposed to petitioner's innocence or guilt.

Amended Petition at 2 (Docket No. 13-1).

When Whitfield's appellate counsel raised these arguments on direct appeal, the Fourth

Department rejected them, finding that the trial court did not err in denying his motion for

substitution of counsel made on the day of trial:

> Defense counsel advised the court that he acknowledged defendant's right to
> waive a jury trial, but that he disagreed with defendant's decision [to waive jury]
> as a matter of trial strategy, and defendant requested new counsel because of that
> disagreement. Defendant did not provide the court with any further explanation.
> Thus, the court properly determined that defendant failed to demonstrate good
> cause for substitution of counsel[.]

*People v. Whitfield*, *supra* (citing, *inter alia*, *People v. Sawyer*, 57 N.Y. 12, 18-19, *rearg.*

*dismissed*, 57 N.Y.2d 776, *cert. denied*, 458 U.S. 1178)). The Court finds that the Appellate

Division correctly found that Whitfield's substitution-of-counsel claim was without merit, as

discussed further below.

**1.    Ground Two(a):      Denial of motion to substitute counsel**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his

defence." U.S. CONST. amend. VI. However, "the right to choose one's own counsel is not absolute." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir.1993)). Rather, "[t]he Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing." *Id.* (citing *Wheat*, 486 U.S. at 159; *Locascio*, 6 F.3d at 931). As the Second Circuit has observed, because a defendant's right to counsel of his or her choice is "not absolute," a trial court "may require" a defendant to proceed to trial with counsel not of defendant's choosing, although it "may not compel" defendant to proceed with an attorney who is "incompetent." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997).

Federal courts have held that the question of whether the trial court erred in refusing a defendant's request to substitute a different assigned attorney to represent him is evaluated under an "abuse of discretion" standard, looking specifically at the following factors: the timeliness of the defendant's motion; adequacy of the trial court's inquiry into the defendant's complaint about counsel; and whether the attorney/client conflict was "'so great that it had resulted in total lack of communication preventing an adequate defense.'" *United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir. 2001) (citing *Morris v. Slappy*, 461 U.S. 1, 13 (1983) ("The determination of whether or not the motion for substitution of counsel should be granted is within the discretion of the trial court. . . ."); *United States v. Allen*, 789 F.2d 90, 92 (1st Cir. 1986); *United States v. Whaley*, 788 F.2d 581, 583 (9th Cir. 1986)); *accord United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001).

Whitfield's motion to substitute counsel was made immediately prior to the commencement of trial, and therefore was clearly not timely. Moreover, he failed to demonstrate

that a substitution of attorneys was warranted.  The trial court attempted to elicit from Whitfield

his reasons for his dissatisfaction with trial counsel but Whitfield stated that he had nothing to

add to what counsel had said. 0130. The only basis for request for substitution appears to be that

defense counsel did not agree with Whitfield's desire to waive a jury trial. However, defense

counsel indicated his willingness to proceed as his client wished and did a commendable job

representing Whitfield at the bench trial. Thus, Whitfield has failed to demonstrate that the

alleged conflict between him and his attorney was so great as to result in a total breakdown of

communication preventing an adequate defense Whitfield was not entitled to counsel of his

choice; he was only entitled to effective counsel, which he certainly received. *See United States

v. Mills*, 895 F.2d 897, 904 (2d Cir. 1990) (holding that an indigent defendant is not entitled to

counsel of his choice; rather, he is entitled only to effective representation). Whitfield suffered no

violation of his constitutional rights as a result of the trial court's decision to deny his motion for

substitute assigned counsel.

### 2.      Ground Two(b):      Denial of recusal motion

On direct appeal, the Appellate Division rejected Whitfield's contention that the trial

court erred in refusing to recuse itself on the ground that the judge had presided over a

proceeding where two of Whitfield's co-defendants had entered guilty pleas:

"Absent a legal disqualification under Judiciary Law § 14,[4] a Trial Judge is the

---

[4]        In New York, statutory grounds for disqualification are set forth in New York Judiciary Law § 14,
entitled "Disqualification of Judge By Reason of Interest or Consanguinity." In addition, New York's Code of
Judicial Conduct provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's
impartiality might reasonably be questioned," including instances where "the judge has a personal bias or prejudice
concerning a party." N.Y. Jud. Law Canon 3(E)(1); N.Y. Comp. Codes R. & Regs. tit. 22 § 100.3(E)(1) (same); see
also N.Y. Comp.Codes R. & Regs. tit. 22 § 700.5(c) ("A judge shall preside at such trial unless he is satisfied, upon
challenge or *sua sponte*, that he is unable to serve with complete impartiality, in fact or appearance, with regard to
the matter at issue or the parties involved.").

> sole arbiter of recusal. . . . When the alleged impropriety arises from information derived during the performance of the court's adjudicatory function, then recusal could surely not be directed as a matter of law. A court's decision in this respect may not be overturned unless it was an abuse of discretion," and here there was no abuse of discretion[.]

*People v. Whitfield*, *supra* (internal quotation and citation omitted). Whitfield has demonstrated neither an error of New York state law nor an error of federal constitutional magnitude in the trial court's decision not to recuse itself.

After the trial court denied Whitfield's "12th hour" request for substitute counsel, *see* 0130, defense counsel made a motion on Whitfield's behalf to have the trial judge recuse himself on the basis of his involvement in the plea allocutions of Aldomond "George" Whitfield and Robert Anthony, *see* 0131-34 (citing *People v. Zappacosta*, 77 A.D.2d 928, 431 N.Y.S.2d 96 (App. Div. 2d Dept. 1980)). Defense counsel acknowledged that merely because a judge is involved in the pre-trial process is not enough to compel recusal[5] but argued that the "nature of the proceedings" with Whitfield's two co-defendants made recusal warranted under *Zappacosta* in order to avoid the appearance on impropriety. 0134. The trial judge indicated that he had reviewed the *Zappacosta* case and stated that while he was "not unmindful of the concerns" expressed therein but believed that the factual circumstances made it "distinguishable" from Whitfield's situation. 0135-36. Accordingly, the judge denied the request for recusal. As discussed below, this Court agrees that there was no abuse of discretion in the trial judge's decision not to recuse himself, and therefore no violation of New York state law.

---

[5]     *People v. Moreno*, 70 N.Y.2d 403, 407 (N.Y. 1987) ("Unlike a lay jury, a Judge 'by reasons of learning, experience and judicial discipline, is uniquely capable of distinguishing the issues and of making an objective determination' based upon appropriate legal criteria, despite awareness of facts which cannot properly be relied upon in making the decision . . .  Recognizing this key premise, 'it suffices to say that there is no prohibition against the same Judge conducting a pretrial hearing as well as the trial itself[.]'") (internal quotation and citation omitted)).

In *People v. Moreno*, 70 N.Y.2d 403, 407 (N.Y. 1987), the New York Court of Appeals expressly limited the holding of *People v. Zappacosta*, 77 A.D.2d 928, 930, 431 N.Y.S.2d 96, explaining that it was an "exceptional" case in which the "Appellate Division [had] noted the presence of an 'amalgam of peculiar circumstances' which required recusal despite a recognition of the rule that 'there is no general prohibition against the same Judge conducting a bench trial as conducted preliminary hearings on the admissibility of evidence[.]'" *People v. Moreno*, 70 N.Y.2d at 406 (quoting *People v. Zappacosta*, 77 A.D.2d at 929). The trial judge, during the plea allocution of Zappacosta's co-defendant (and wife), actively elicited information from her which incriminated Zappacosta. *Id.* (citing *Zappacosta*). This information was not necessary to taking the wife's guilty plea, but rather "'constituted information on the ultimate issue of appellant's guilt which the court, as trier of fact, would not otherwise have had[.]'" *Id.* (quoting *Zappacosta*, 77 A.D.2d at 929).

Furthermore, as the Appellate Division noted in *Zappacosta*, the "special nature of a marital relationship" gave "added credence" to the wife's statements implicating defendant, and the "danger of prejudice" became "especially apparent" because the "underlying criminal transaction [was] factually detailed and complex." *People v. Zappacosta*, 77 A.D.2d at 929. In contrast to *People v. Zappacosta*, the co-defendants and Whitfield did not have a special relationship akin to the husband-wife relationship of the defendant and co-defendant in *Zappacosta*. Moreover, as the trial judge noted, there was nothing particularly complicated about the underlying criminal charges in Whitfield's case. Finally, unlike *Zappacosta*, the co-defendant's plea allocations did not contain information on the ultimate issue of Whitfield's guilt

which the court, as the trier of fact, would not otherwise have had.[6]

The New York Court of Appeals explained in *Moreno* that *Zappacosta* was an "exceptional case" which "may not be read to have erected an objective appearance of impropriety test premised on a presumption of irregularity or bias." *Id.* (citing *Matter of Johnson v. Hornblass*, 93 A.D.2d 732, 733, 461 N.Y.S.2d 277 ("In the absence of a violation of express statutory provisions, bias or prejudice or unworthy motive on the part of a Judge, unconnected with an interest in the controversy, will not be a cause of disqualification, unless shown to affect the result[.]"). The New York Court of Appeals rejected the "radical test" urged by defendant Moreno of "equating knowledge acquired as part of pretrial adjudication with an appearance of impropriety thus requiring recusal for bench trial purposes[.]" *Id.* Because the purportedly prejudicial information in defendant Moreno's case "was acquired through the court's performance of its adjudicative responsibilities," there was no need for recusal since the "alleged bias and prejudice [did not] stem from an extrajudicial source. . . ." *Id.* (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *Berger v. United States*, 255 U.S. 22, 31 (1921) (holding that "bias or prejudice which can be urged against a judge must be based upon something other than rulings in the case"). Accordingly, the New York Court of Appeals held in *Moreno* that the trial judge, who, during pretrial adjudication acquired information inadmissible

---

[6]      When co-defendant George pled guilty to fourth degree conspiracy (N.Y. Penal Law § 105.10(1)) to commit attempted robbery, the trial judge did not elicit statements which were unnecessary to that co-defendant's plea allocution. 0060-62. The court simply asked him whether he entered "into agreement with a Leonard Whitfield and Robert Anthony" "to commit a robbery at the Mobil Express Mart." 0061. The remainder of the brief colloquy concerned George's actions in driving Robert to the store for the purpose of committing the robbery and did not mention Whitfield's name. When co-defendant Robert pled guilty to attempted first degree robbery (N.Y. Penal Law §§ 160.15(2), 110.00) while armed with a deadly weapon (a handgun). Robert only mentioned Whitfield as being "in the area" when he got the gun from Ray. When asked if he talked about obtaining the gun prior to the crime, and with whom, Robert replied "[a]ll the co-defendants." 0076-77. In neither George's nor Robert's case did the trial judge elicit information unnecessary to taking their pleas or which went to the ultimate issue of petitioner's guilt on the charges of which the court, as the trier of fact, would not otherwise have had.

before the fact-finder of guilt or innocence, was not legally disqualified from conducting

Moreno's bench trial which defendant chose based on fully informed waiver of his jury trial

right. *Id.*

   For all of the foregoing reasons, Whitfield has failed to show that the denial of the recusal

motion was erroneous as a matter of state law. Even if he had, that would not be sufficient to

entitle him to the grant of the writ as federal habeas relief is not available for mere errors of state

law. 28 U.S.C. § 2254(a). Instead, Whitfield must demonstrate an error of federal constitutional

magnitude. However, he cannot do so because his allegations of bias and prejudice do not

amount to an offense of the Due Process Clause of the United States Constitution. In *Aetna Life

Ins. Co. v. Lavoie*, the Supreme Court observed that " '[m]ost matters relating to judicial

disqualification *[do] not rise to a constitutional level*.' " 475 U.S. 813, 820 (1986) (quoting *FTC

v. Cement Inst*., 333 U.S. 683, 702 (1948) (emphasis supplied). "'A fair trial in a fair tribunal is a

basic requirement of due process.'" *Peters v. Kiff*, 407 U.S. 493, 501 (1972) (quoting *In re

Murchison*, 349 U.S. 133, 136 (1955)). Thus, although the Constitution does not address every

issue of judicial qualification, the Due Process Clause of the Fourteenth Amendment establishes

minimum constitutional requirements of fairness. The Supreme Court has also recognized,

however, that "it is normally within the power of the State to regulate procedures under which its

laws are carried out." *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. at 821 (quoting *Patterson v. New

York*, 432 U.S. 197, 201-02 (1977)). In *Tumey v. Ohio*, the Supreme Court held that the Due

Process guarantee of the Fourteenth Amendment is impaired where the judge has a "direct,

personal, substantial, or pecuniary interest in reaching a particular result" in a civil or criminal

proceeding. 273 U.S. 510, 523 (1927).

Where, however, the grounds for disqualification involve bias or prejudice, the Court has held that "only in the most extreme of cases would disqualification . . . be constitutionally required." *Aetna*, 475 U.S. at 821. To be a basis for disqualification, the "alleged bias and prejudice . . . must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) (citing *Berger v. United States*, 255 U.S. 22, 31 (1921)); *accord United States v. Sclafani*, 487 F.2d 245, 255 (2d Cir.1973) ("Disqualification is warranted and appropriate only if the alleged bias and prejudice stems from an extrajudicial source" and results in an opinion on the merits not based on what the judge has learned through the judicial proceedings.). The Supreme Court has held that a judge's opinion about a case, which results from his involvement in previous proceedings involving the same parties, is not a "basis for a bias or partiality motion unless [the opinion] display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555; *see also id.* at 551 (noting that it has "long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant"). Thus, "[t]he rule of law . . . is that what a judge learns in his judicial capacity whether by way of guilty pleas of codefendants or alleged coconspirators, or by way of pretrial proceedings, or both is a proper basis for judicial observations, and the use of such information is *not* the kind of matter that results in disqualification." *United States v. Bernstein*, 533 F.2d 775, 785 (2d Cir. 1976) (emphasis supplied). Clearly, then, as a matter of federal law, there was nothing constitutionally improper about the trial judge declining to recuse himself simply because he was involved in the plea allocutions of two of Whitfield's co-defendants. *See Bernstein*, 533 F.2d at 755.

Furthermore, Whitfield has failed to demonstrate that the trial judge had pre-judged the issues in his case and concluded–before trial–that he was already guilty. Indeed, neither bias nor prejudice on the part of the trial judge is discernible on the record before this Court. Accordingly, Whitfield has failed to show that his due process rights were violated.

### C.   Ground Three:   "Cruel and unusual punishment, Eighth Amendment violation"

Whitfield contends that "the sentence imposed on [him] was excessive as opposed to the actual involvement that was proven by the prosecution" and "amounted to a violation of the eighth amendment of the constitution of the United States." Amended Petition at 2 (Docket No. 13-1).

As respondent points out, a petitioner's challenge to the term of his sentence generally is not a constitutional issue cognizable on federal habeas review. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979). In Whitfield's case, N.Y. Penal Law § 70.02(2) establishes the applicable sentencing guidelines with respect to his conviction for first degree robbery, a class B felony and the highest level felony on which he was convicted. Under the version of the Penal Law in effect as of the date Whitfield committed the crimes at issue (June 17, 1998), Whitfield had to be sentenced to an indeterminate term of imprisonment having a maximum term of between 6 and 25 years, and a minimum term of one-half of the maximum term. *See* Former N.Y. Penal Law § 70.02(2), (3).[7] Whitfield received an

---

[7]     N.Y. Penal Law § 70.02(3), relating to the term of the sentence, was rewritten by L.1998, c. 1, § 7. Prior thereto, it read as follows: "Maximum term of sentence. The maximum term of an indeterminate sentence for a violent felony offense must be fixed by the court as follows: (a) For a class B felony, the term must be at least six years and must not exceed twenty-five years[.]" With respect to N.Y. Penal Law § 70.02(2)(c), by means of L.1998, c. 1, § 6, the legislature substituted "a determinate" for "an indeterminate" in the opening paragraph discussing the type of sentence to be imposed for a violent felony offense. *See* N.Y. Penal Law § 70.02 (Historical and Statutory Notes).

indeterminate sentence having a maximum of 22 years and a minimum of 11 years, and thus his sentence was in accordance with the statutory provisions set forth in the Penal Law. "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d at 1383. Accordingly, Whitfield's challenge to the length of his sentence is dismissed as not cognizable on federal habeas review.

## V.      Conclusion

For the reasons stated above, Leonard Whitfield's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Whitfield has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c).

**IT IS SO ORDERED**.

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      October 31, 2007
            Buffalo, New York.